# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| TROY BEARDEN, individually and on behalf | : | Civil Action No.:  2:11-cv-01511-NBF |
| of all persons similarly situated, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PRECISION AIR DRILLING | : | |
| SERVICES, INC., | : | |
| | : | |
| Defendant. | : | |

## SETTLEMENT AGREEMENT AND RELEASE

1.     This Settlement Agreement and Release (the "Settlement Agreement" or "Agreement") is entered into between Plaintiff Troy Bearden ("Mr. Bearden" or the "Named Plaintiff"), individually and on behalf of all persons similarly situated as defined below, and Defendant Precision Air Drilling Services, Inc. ("Precision" or "Defendant"), subject to the approval of the Court.

## DEFINITIONS

2.     As used in this Settlement Agreement, the following terms shall have the following meanings:

a.     "Claim Form" means the form provided for the Settlement Class Members who have not already submitted an Opt-In Consent Form to submit in order to obtain a Settlement Award under this Settlement Agreement, as set forth in Exhibit B attached to this Settlement Agreement.

b.     "Claims Administrator" means Heffler, Radetich & Saitta LLP ("Heffler").

c.     "Claims Released" with respect to Mr. Bearden means any and all claims, demands, rights, liabilities, damages, penalties, and liquidated damages, whether known or unknown, that have accrued prior to the date of approval of this settlement by the Court, and that have been or could have been asserted against Defendant by Mr. Bearden, or an agent, successor, assign, heir, executor or administrator of Mr. Bearden, for unpaid wages based upon the facts alleged in the Complaint, arising under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA"), and state statutory and common law, for the period of time that Defendant classified Mr. Beardon as a non-exempt employee.

d.     "Claims Submission Period" means the time period of sixty (60) days commencing on the date when the FLSA Notice and Claim Form are initially mailed to the potential Opt-In Plaintiffs, in which they may submit their executed Claim Forms to receive a Settlement Award under this Settlement Agreement.  Individuals who have already submitted an Opt-In Consent form that was filed with the United States District Court for the Western District of Pennsylvania are not required to submit a Claim Form, but will receive the FLSA Notice.

e.     "Collective Action" refers to the above-captioned civil action titled *Bearden v. Precision Air Drilling Services, Inc.*, pending in the United States District Court for the Western District of Pennsylvania, No. 2:11-cv-01511-NBF.

f.     "Defendant" and "Precision Air Drilling Services, Inc." shall encompass Precision Air Drilling Services, Inc. and any current or former officer, director, owner, employee or shareholder of Precision Air Drilling Services, Inc.

g.     "Effective Date" means the date of approval of this Settlement Agreement by the Court.

h.     "FLSA Notice" means the Notice of Collective Action Settlement to be sent to the Named Plaintiff, individuals who have already submitted an Opt-In Consent form that was filed with the United States District Court for the Western District of Pennsylvania and the potential Opt-In Plaintiffs, pursuant to the terms of the Court's Approval Order.  The FLSA Notice shall be substantially in the form attached as Exhibit A to this Settlement Agreement. The potential Opt-In Plaintiffs include all individuals who are current or former non-exempt employees of Precision Air Drilling Services, Inc. ("Precision"), who performed work for Precision in the United States at any time between November 28, 2008 and April 30, 2012, and who were paid pursuant to a daily rate compensation system, including but not limited to Operators and those in similarly titled positions.  A list of all such individuals, including their employee number, name, last known address, last known telephone number, (to the extent known by Precision Air Drilling Services, Inc.) shall be provided by Defendant to Plaintiff's Counsel within five (5) business days after the Court's approval of this Settlement Agreement. A list of all such individuals, including their employee number, name, last known address, last known telephone number, and social security number (to the extent known by Precision Air Drilling Services, Inc.) shall be provided by Defendant to the Claims Administrator within five (5) business days after the Court's approval of this Settlement Agreement.  Upon a diligent and good faith review of its payroll records, Defendant has identified 107 potential Opt-In Plaintiffs.

i.     "Gross Settlement Amount" means the maximum amount that Defendant shall pay in exchange for the release of all Settled Claims by Mr. Bearden and the Opt-In Plaintiffs, which is the sum of Five Hundred Thousand Dollars and Zero Cents ($500,000.00), excluding the employers' share of FICA and FUTA payroll taxes.  In no event shall the Gross Settlement Amount exceed that sum, plus the employers' share of FICA and FUTA payroll taxes on the amounts paid to Opt-In Plaintiffs.

j.     "Named Plaintiff" means Troy Bearden (also referred to as "Plaintiff").

k.      "Net Settlement Amount" means the Gross Settlement Amount less: (1) the total of Fifteen Thousand Dollars ($15,000.00) set aside for the Named Plaintiff as compensation for his individual retaliation claim against Defendant, and for his efforts in bringing and prosecuting this matter, and in exchange for his Claims Released executed in favor of Defendant as set forth in paragraph 2(c), above; (2) the payment of attorneys' fees to Plaintiff's Counsel, not to exceed One Hundred and Sixty-Six Thousand, Five Hundred Dollars ($166,500.00) (which is approximately one third or 33.33% of the Gross Settlement Amount), and the payment of current out-of-pocket costs incurred by Plaintiff's Counsel, not to exceed Nine Thousand Two Hundred Eighteen Dollars and Eighty-Five Cents ($9,218.85); and (3) a maximum of Fifteen Thousand Dollars ($15,000.00) for the Claims Administrator's estimated costs of the settlement administration.   Pursuant to this Settlement Agreement, the Net Settlement Amount shall be approximately Two Hundred Ninety-Four Thousand, Two Hundred Eighty-One Dollars and Twenty Cents ($294,281.20).

l.      "Opt-In Plaintiff" means any person who opted into the above-captioned lawsuit by: (i) returning and filing an Opt-In Consent Form; or (ii) returning a fully executed, timely Claim Form to the Claims Administrator.

m.      "Parties" means the Named Plaintiff and Defendant.

n.      "Plaintiff's Counsel" means Berger & Montague, P.C. and Hardin & Hughes LLP.

o.      "Released Parties" means: (i) Precision Air Drilling Services, Inc.; (ii) any subsidiary, parent company, successor, assign, or division of Precision Air Drilling Services, Inc.; and (iii) any current or former officer, director, owner, employee or shareholder of an entity referenced in this paragraph.

p.      "Settled Claims" means any and all claims under the FLSA which were asserted in this Collective Action against the Released Parties and which arise based on the same facts set forth in the Collective Action on behalf of the Opt-In Plaintiffs with respect to the time that they were employed and classified by Precision Air Drilling Services, Inc. as non-exempt, daily rate Operators or other non-exempt, daily rate positions between November 28, 2008 and April 30, 2012.

q.      "Settlement Agreement" means this Agreement and all Exhibits attached to it.

r.      "Settlement Award" means the gross payment that each Opt-In Plaintiff shall be entitled to receive pursuant to the terms of the Settlement Agreement.

## RECITALS

3.      On November 28, 2011, Plaintiff Troy Bearden filed *Bearden v. Precision Air Drilling Services, Inc.*, No. 2:11-cv-01511-NBF, in the United States District Court for the Western District of Pennsylvania, alleging that Defendant failed to properly pay overtime

3

compensation to those it classified as non-exempt, daily rate employees under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA").

4.     On April 30, 2012, following a period of agreed discovery, the Parties participated in mediation in Denver, Colorado, overseen by former Indiana Superior Court Judge Susan L. Macey, an experienced mediator with the Judicial Arbiter Group.  As a result of the mediation, and subsequent arms'-length negotiations, the Parties have agreed to settle the FLSA Collective Action according to the terms of this Agreement.

5.     The Parties have conducted relevant discovery and investigated the facts relating to the claims alleged and have made a thorough study of the legal principles applicable to the claims asserted against Defendant in the Collective Action.  Based upon Plaintiff's Counsel's investigation, legal evaluation and taking into account the contested legal and factual issues involved, including the Parties' assessment of the uncertainties of litigation, the financial condition of Defendant, and the relative benefits conferred upon the potential Opt-In Plaintiffs pursuant to this Settlement Agreement, Plaintiff's Counsel have concluded that the settlement with Defendant on the terms set forth in this Settlement Agreement is fair, reasonable, adequate and in the best interests of the Named Plaintiff and the Opt-In Plaintiffs.

6.     The Parties recognize that notice to potential Opt-In Plaintiffs of the material terms of this Settlement Agreement, as well as Court approval of the Settlement Agreement, are required to effectuate the Settlement Agreement, and that the Settlement Agreement will not become operative until the Court grants approval the Settlement Agreement.

7.     The Parties stipulate and agree that, for settlement purposes only, the requisites for establishing collective action certification under the FLSA pursuant to 29 U.S.C. § 216(b) with respect to the Opt-In Plaintiffs are met, because the Opt-In Plaintiffs are similarly situated.

8.     NOW THEREFORE, IT IS HEREBY AGREED, BY AND BETWEEN the undersigned, that the FLSA Collective Action shall be settled, subject to the approval of the Court, pursuant to the following terms and conditions:

## **RELEASES**

9.     <u>Release</u>.  It is hereby agreed, that subject to the approval of the Court, in consideration of the benefits inuring to the Parties hereto, that upon entry of an order approving this Settlement:

a.     Named Plaintiff Mr. Bearden shall be deemed to have released and forever discharged the Released Parties from any and all Claims Released; and

b.     Each Opt-In Plaintiff who elects to participate in this Collective Action by having already returned and filed an Opt-In Consent Form or by returning a fully executed, timely Claim Form shall be deemed to have jointly and severally released and discharged the Released Parties from any and all Settled Claims.

4

10.    <u>Release Language on Settlement Checks</u>.  The Claims Administrator shall include the following release language on the back of each settlement check:

> My signature or cashing of this check constitutes my release of Precision Air Drilling Services, Inc. of all Settled Claims that I agreed to settle by submitting an Opt-In Consent Form or Claim Form to participate in the settlement of *Bearden v. Precision Air Drilling Services, Inc.*, No. 2:11-cv-01511-NBF (W.D. Pa.), namely, all claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA"), for unpaid overtime during the time I was employed and classified by Precision Air Drilling Services, Inc. as a non-exempt, daily rate employee between November 28, 2008 and April 30, 2012.

## FLSA NOTICE AND CLAIMS PROCESS

11.    <u>Joint Motion for Approval of the Settlement Agreement</u>.  On or before June 13, 2012, the Parties will file with the Court a Joint Motion for Approval of the Settlement Agreement, and shall appear for a hearing if the Court so orders.  The Parties will jointly request the Court to enter an Order approving this Settlement Agreement, certifying this FLSA Collective Action for purposes of this settlement pursuant to 29 U.S.C. § 216(b), and approving the FLSA Notice to the Named Plaintiff, individuals who have already submitted an Opt-In Consent form that was filed with the United States District Court for the Western District of Pennsylvania and Potential Opt-In Plaintiffs and Claim Form to be sent to the potential Opt-In Plaintiffs.

12.    <u>FLSA Notice</u>.  Notice of this settlement shall be provided to the Named Plaintiff, individuals who have already submitted an Opt-In Consent form that was filed with the United States District Court for the Western District of Pennsylvania and the potential Opt-In Plaintiffs. The Parties agree that the proposed procedures for notice provide the best practicable notice to the potential Opt-In Plaintiffs:

a.    The Claims Administrator shall be responsible for preparing, printing and mailing to the Named Plaintiff, individuals who have already submitted an Opt-In Consent form that was filed with the United States District Court for the Western District of Pennsylvania and all potential Opt-In Plaintiffs the FLSA Notice and Claim Form attached to this Settlement Agreement as Exhibits A and B, as directed and approved by the Court.

b.    By the date set forth in Paragraph 2(h), above, a list of all potential Opt-In Plaintiffs shall be provided by Defendant to the Claims Administrator and Plaintiff's Counsel.

c.    In order to provide the best notice practicable, the Claims Administrator will do the following before mailing the FLSA Notice and Claim Form: (1) run the list of potential Opt-In Plaintiffs through the U.S. Postal Service's National Change of Address database ("NCOA"); and (2) perform address searches using public and proprietary electronic resources which collect their data from various sources such as utility records, property tax records, motor vehicle registration records (where allowed) and credit bureaus.

      d.      Within five (5) business days after receiving the list of potential Opt-In Plaintiffs, the Claims Administrator shall send a copy of the FLSA Notice substantially in the form attached hereto as Exhibit A to the Named Plaintiff, individuals who have already submitted an Opt-In Consent form that was filed with the United States District Court for the Western District of Pennsylvania and a copy of the Claim Form substantially in the form attached hereto as Exhibit B to all potential Opt-In Plaintiffs, via first-class mail, postage prepaid, with an enclosed self-addressed stamped return envelope, using the most current mailing address information available as set forth above.

      e.      Any FLSA Notice returned to the Claims Administrator before the expiration of the Claims Submission Period as non-delivered shall be sent to the forwarding address affixed thereto.  If no forwarding address is provided, then the Claims Administrator shall perform a standard skip trace to attempt to determine the most current mailing address, and shall resend the FLSA Notice and/or Claim Form to that address.  The Claims Administrator may also call last-known telephone numbers (and telephone numbers updated through public and proprietary databases) of potential Opt-In Plaintiffs whose FLSA Notice and/or Claim Form is returned as non-delivered to attempt to obtain their current addresses.

      f.      The Claims Administrator shall send a duplicate copy of the FLSA Notice and Claim Form via first-class mail, postage prepaid, with an enclosed self-addressed stamped return envelope, to all potential Opt-In Plaintiffs who have not yet submitted Claim Forms on the first business day following thirty (30) days after the initial mailing.

      g.      During the Claim Submission Period, the Claims Administrator and/or Plaintiff's Counsel may call the last-known telephone numbers (and telephone numbers updated through public and proprietary databases) of Opt-In Plaintiffs who have not yet submitted Claim Forms to confirm that the FLSA Notice and Claim Form have been received.

      h.      During the Claims Submission Period, Defendant may provide the FLSA Notice and Claim Form to, and communicate about the settlement with, all of its current employees who are potential Opt-In Plaintiffs, consistent with the terms and provisions of this Settlement Agreement, and may collect executed Claim Forms and provide them to the Claims Administrator.  Defendant may also reasonably communicate to current employees about the Settlement, provided that no communication shall in any way interfere with any Opt-In Plaintiff's right to participate in the settlement.

      13.    <u>Determination of Settlement Award Eligibility</u>.  All Opt-In Plaintiffs will be eligible to receive a Settlement Award.  The FLSA Notice shall include instructions on how to submit the Claim Form, and shall notify recipients that the Claim Form must be completed and postmarked by the expiration of the Claims Submission Period.

      14.    <u>Interim Report by the Claims Administrator</u>.  No later than five (5) business days after the expiration of the Claims Submission Period, the Claims Administrator shall provide counsel for the Parties with a declaration setting forth: (a) due diligence and proof of mailing of the FLSA Notice and Claim Form; (b) the total number Opt-In Plaintiffs who were sent the

FLSA Notice and/or Claim Form; and (c) the total number of Opt-In Plaintiffs who returned the Claim Form.

15.     <u>Declaration and Status Report Filed with Court</u>.  Within thirty-five (35) days after the end of the Claims Submission Period period, Plaintiff's Counsel shall file a declaration of Plaintiffs' Counsel and the declaration of the Claims Administrator setting forth the status of the settlement and stating that all terms and provision of this Settlement Agreement have been followed.  At this time, the parties shall also present a proposed Order regarding final judgment and a stipulated request for dismissal of the entire action with prejudice.

16.     <u>Implementation Schedule</u>.  Plaintiff and Defendant agree that the dates set forth in this Agreement shall only be continued based on: (a) the mutual consent in writing of counsel for the Parties; (b) delays due to the Court's schedule; or (c) by Order of the Court.

## <u>SETTLEMENT FUNDS AND AWARD CALCULATION</u>

17.     <u>Gross Settlement Amount</u>.

a.     <u>Deposit</u>.  Within five (5) business days after the Claims Submission Period, Defendant shall deliver the total amount of the Gross Settlement Amount to the Claims Administrator.  Upon receipt by the Claims Administrator, these funds shall be transferred immediately into a Qualified Settlement Fund pursuant to Internal Revenue Code Section 1.468B-1.  Within five (5) business days after submitting these funds to the Claims Administrator and receiving an election statement from the Claims Administrator, Defendant shall execute an election statement provided by the Claims Administrator which shall be affixed to the initial tax return of the Qualified Settlement Fund in order to establish the start date of the Qualified Settlement Fund.

b.     <u>Disbursement by Claims Administrator</u>.  All disbursements shall be made from the Qualified Settlement Fund account.  The Claims Administrator shall be the only entity authorized to make withdrawals or payments from the Qualified Settlement Fund Account.

c.     <u>Interest</u>.  The interest on the funds deposited by Defendant will inure *pro rata* to the Party or persons to whom the underlying funds are ultimately paid out.

18.     <u>Payments</u>.  Subject to the Court's approval and for purposes of effectuating this Settlement Agreement, the following amounts shall be paid by the Claims Administrator from the Gross Settlement Amount:

a.     <u>Payment to Named Plaintiff for Release of Retaliation Claim and for Service Award</u>.  Subject to the Court's approval and in exchange for the release of all Claims Released, the Named Plaintiff shall receive Fifteen Thousand Dollars ($15,000.00) as compensation for his retaliation claim against Defendant, and for his efforts in bringing and prosecuting this matter, and in exchange for his Claims Released executed in favor of Defendant as set forth in paragraph 2(c).  The Qualified Settlement Fund shall issue a Form 1099 for this payment.  This payment shall be made within 15 business days following the Claims Submission Period.

b.      Attorneys' Fees and Costs.

(i)      Subject to the Court's approval, Plaintiff's Counsel's attorneys' fees shall be One Hundred and Sixty-Six Thousand, Six Hundred and Fifty Dollars ($166,650.00) (which is approximately one third or 33.33% of the Gross Settlement Amount), which will compensate Plaintiff's Counsel for work already performed in this Collective Action as well as all of the work remaining to be performed in this Collective Action, including but not limited to documenting the Settlement, securing Court approval of the Settlement, making sure that the Settlement is fairly administered and implemented, and obtaining final dismissal of the Collective Action.  In addition, Plaintiff's Counsel's costs shall be Nine Thousand Two Hundred Eighteen Dollars and Eighty-Five Cents ($9,218.85) (costs as of the date of this Agreement), plus any costs incurred in documenting the Settlement, securing Court approval of the Settlement, making sure that the Settlement is fairly administered and implemented, and obtaining final dismissal of the Collective Action.

(ii)      The Claims Administrator shall pay the attorneys' fees and costs from the Qualified Settlement Fund within 15 business days following the Claims Submission Period.

(iii)      The attorneys' fees and costs paid by Defendant pursuant to this Agreement shall constitute full satisfaction of Defendant's obligations to pay amounts to any person, attorney or law firm for attorneys' fees or costs in this Collective Action on behalf of the Named Plaintiff and/or any Opt-In Plaintiff, and shall relieve Defendant from any other claims or liability to any other attorney or law firm for any attorneys' fees or costs to which any of them may claim to be entitled on behalf of the Named Plaintiff or Opt-In Plaintiff.

(iv)      A Form 1099 shall be provided to Plaintiff's Counsel for the payments made to Plaintiff's Counsel.  Each firm constituting Plaintiff's Counsel shall be solely and legally responsible to pay any and all applicable taxes on the payment made to that firm.

c.      Costs of Administration.  Claims Administration fees and costs shall not exceed Fifteen Thousand Dollars ($15,000.00), and shall be paid from the Gross Settlement Amount as set forth in this Settlement Agreement.  Following the distribution of the settlement proceeds to the Opt-In Plaintiffs, the Claims Administrator shall provide the Parties with a statement detailing the actual costs of administration.  To the extent that the amount reported does not exceed the currently projected funds set aside for estimated costs of administration, the remaining sums shall be deposited into the Qualified Settlement Fund.  The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the costs and expenses incurred in the administration of the settlement.

19.      Settlement Awards to Opt-In Plaintiffs.  All Opt-In Plaintiffs and the Named Plaintiff shall be paid a Settlement Award from the Net Settlement Amount.  The Claims Administrator, subject to Court approval, shall be responsible for determining eligibility for, and the amount of, the Settlement Awards to be paid to the Named Plaintiff and Opt-In Plaintiffs. The Named Plaintiff and any other Opt-In Plaintiffs who have already joined the case by filing

on Opt-In Consent Form do not need to file any additional Claim Forms to participate in this Settlement.

              a.      Each Opt-In Plaintiff and the Named Plaintiff shall be treated the same for the purpose of calculating individual Settlement Awards.

              b.      The Claims Administrator will calculate an award for the Named Plaintiff and Opt-In Plaintiffs based on the total number of weeks that the respective individual worked for Defendant during the time period between November 28, 2008 and April 30, 2012.  Each week shall equal one settlement share, and the total number of settlement shares for the Named Plaintiff and Opt-In Plaintiffs will be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure.  That figure will then be multiplied by each of the Named Plaintiff and Opt-In Plaintiffs' number of settlement shares to determine the Named Plaintiff and Opt-In Plaintiff's Settlement Award.  The formula for determining awards for the Named Plaintiff and Opt-In Plaintiffs shall be set forth in the FLSA Notice.

              c.      All Settlement Award determinations shall be based on Defendant's personnel and payroll records.  There is a rebuttal presumption that Defendant's records are correct, but Opt-In Plaintiffs will have the opportunity on the Claim Form, should they disagree with Defendant's records, to provide documentation to show a contrary number of weeks worked during the relevant time period.  If there is a dispute, the Settlement Administrator shall evaluate and make a final determination based upon the information and documentation provided, but shall first provide at least three (3) business days notice to all counsel of the dispute.

              d.      Settlement Awards shall be paid to the Named Plaintiff and Opt-In Plaintiffs within twenty (20) business days following expiration of the Claims Submission Period.

              e.      The Parties agree that fifty percent (50%) of each Settlement Award shall be treated as back wages paid by Defendant.  Accordingly, on each Settlement Award, the Claims Administrator shall effectuate federal and applicable state income and employment tax withholding as required by law with respect to fifty percent (50%) of each Settlement Award distributed, and Defendant shall pay the employer's share of all required FICA and FUTA taxes on such amounts.  Defendant shall pay these taxes, which amounts shall be deposited into the Qualified Settlement Fund after the Settlement Awards are mailed to Opt-In Plaintiffs on the date specified in this Agreement, in addition to the Gross Settlement Amount.  Amounts withheld will be remitted by the Claims Administrator from the Qualified Settlement Fund to the appropriate governmental authorities.  The remaining fifty percent (50%) of each Settlement Award shall be treated by all Parties as non-wage penalties and liquidated damages, to be reported to the Named Plaintiff and Opt-In Plaintiffs on an IRS Form 1099, and shall not be subject to FICA and FUTA withholding taxes.  Defendant shall cooperate with the Claims Administrator to provide payroll tax information to the Claims Administrator as shall be necessary to accomplish the income and employment tax withholding on the wage portion of each Settlement Award, and the Form 1099 reporting for the non-wage portion of each Settlement Award.

f.      The Claims Administrator shall provide counsel for all Parties with copies of all completed Claim Forms and a final report listing the Named Plaintiff and all Opt-In Plaintiffs who submitted a timely and valid Claim Form, and the Settlement Award to be paid to the Named Plaintiff and each Opt-In Plaintiffs, at least five (5) business days before the Settlement Awards are mailed.

g.      All checks for Settlement Awards shall remain valid and negotiable for one hundred eighty (180) days from the date of their issuance and may thereafter automatically be canceled if not cashed within that time, at which time the right to recover any Settlement Award will be deemed void and of no further force and effect.  All funds from checks not cashed will revert to the Qualified Settlement Fund maintained by the Claims Administrator.  The Claims Administrator will include with the checks a letter stating that the check must be cashed or deposited within 180 days or it will be cancelled.

20.      <u>No Claim Based Upon Distributions or Payments in Accordance with this Settlement Agreement</u>.  No person shall have any claim against Defendant or any of the Released Parties, the Named Plaintiff, the Opt-In Plaintiffs, Plaintiff's Counsel, Defendant's Counsel or the Claims Administrator based on distributions or payments made in accordance with this Settlement Agreement.

21.      <u>Remaining Monies</u>.  The Parties agree that if, at the conclusion of the 180 day check void period set forth in Paragraph 26 above, there are any monies remaining in the Qualified Settlement Fund, those monies shall be paid to a *cy pres* non profit organization, the Colorado Lawyer Trust Account Foundation Grant Program (COLTAF).

## **DISPUTE RESOLUTION**

22.      Except as otherwise set forth herein, all disputes concerning the administration, interpretation, calculation or payment of settlement claims, or other disputes regarding compliance with this Settlement Agreement shall be resolved as follows:

a.      If a Party at any time believes that another Party has breached or acted contrary to the Settlement Agreement, that Party shall notify the other Party in writing of the alleged violation, and such notification must be made within ten (10) days that the notifying Party knew or should have known of the alleged violation.

b.      Upon receiving notice of the alleged violation or dispute, the responding Party shall have ten (10) business days to correct the alleged violation and/or respond to the initiating Party with the reasons why the Party disputes all or part of the allegation.

c.      If the response does not address the alleged violation to the initiating Party's satisfaction, the Parties shall negotiate in good faith for up to ten (10) business days to resolve their differences.

       d.     If the Parties are unable to resolve their differences after the meet and confer process set forth above, either Party may file an appropriate motion for enforcement with the Court.

## EFFECT OF DISAPPROVAL OF SETTLEMENT

23.    If the Court declines to enter the Final Approval Order approving this Settlement Agreement, or if the Court enters the Final Approval Order and appellate review is sought and, on such review, the Final Approval Order is reversed, vacated or modified in substance, then this Settlement Agreement shall be void, in which event the parties to this Settlement Agreement shall be deemed to have reverted to their respective status as of the date and time immediately prior to execution of this Settlement Agreement and they shall proceed in all respects as if this Settlement and related order had not been executed. The entire Gross Settlement Amount shall be returned to Defendant except that Defendant will pay for any costs then incurred by the Claims Administrator. Except as provided above, no party shall have the right to terminate this Settlement Agreement.

## MISCELLANEOUS

24.    <u>No Retaliation For Participation in Collective Action.</u> Defendant agrees that it will not take any retaliatory actions against the Named Plaintiff or any Opt-In Plaintiff for participating in this litigation or for submitting an FLSA Claim Form or for otherwise participating in this Collective Action or Settlement. The Named Plaintiff and all Opt-In Plaintiffs who are current employees of Defendant will continue to be treated the same as any other employee of Defendant.

25.    <u>Various Proceedings Stayed</u>. The Parties agree to stay all proceedings in the Collective Action, except such proceedings as may be necessary to implement and complete the Settlement Agreement.

26.    <u>No Admission of Liability</u>. This Settlement Agreement and all related documents are not and shall not be construed as an admission by Defendant of any fault or liability or wrongdoing.

27.    <u>Defense Fees and Costs</u>. All of Defendant's own attorneys' fees and legal costs and expenses incurred in this Collective Action shall be borne by Defendant from Defendant's separate funds and not from the Gross Settlement Amount.

28.    <u>Amendment or Waiver Only in Writing</u>. Subject to Court approval, this Settlement Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors-in-interest. No rights hereunder may be waived except in writing.

29.    <u>Complete Agreement</u>. This Settlement Agreement and attached exhibits set forth the complete agreement between the Parties relating to the Settlement and any and all payments

or obligations owed by Defendant to the Named Plaintiff, Opt-In Plaintiffs, Plaintiff's Counsel, or anyone else in connection with this Collective Action.

30.   <u>Authorization to Execute Agreement and Effectuate Settlement and Agreement to Cooperate</u>.  Counsel for all Parties warrant and represent that they are expressly authorized by the Parties whom they represent to negotiate this Settlement Agreement and to take all appropriate action required or permitted to be taken by such Parties pursuant to this Settlement Agreement to effectuate the terms hereof, and to execute any other documents required to effectuate the terms of this Settlement Agreement.  The Parties and their respective counsel will cooperate with each other and use their best efforts to effect the implementation of the Settlement Agreement.  In the event the Parties are unable to reach agreement on the form or content of any document needed to implement the Settlement Agreement, or on any supplemental provisions that may become necessary to effectuate the terms of this Settlement Agreement, the Parties may seek the assistance of the Court to resolve such disagreement.

31.   <u>Binding Upon Successors and Assigns</u>.  This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors or assigns of the Released Parties and the Parties, as previously defined.

32.   <u>No Prior Assignment</u>.  The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged except as set forth herein.

33.   <u>Governing Law</u>.  All terms of this Settlement Agreement and the exhibits hereto shall be governed by and interpreted according to the laws of the Commonwealth of Pennsylvania and the United States of America, where applicable.

34.   <u>Counterparts</u>.  This Settlement Agreement may be executed in one or more counterparts and by facsimile or email.  All executed copies of this Settlement Agreement, and photocopies thereof (including facsimile and/or emailed copies of the signature pages), shall have the same force and effect and shall be as legally binding and enforceable as the original.

35.   <u>Exhibits</u>.  The terms of this Settlement Agreement include the terms set forth in the attached exhibits, which are incorporated by this reference as though fully set forth herein. The exhibits to this Settlement Agreement are an integral part of the Settlement Agreement. Unless specifically provided otherwise in the exhibits to this Settlement Agreement, in the event of any conflict between the Settlement Agreement and the exhibits, the terms of the Settlement Agreement shall control.

36.   <u>Construction</u>.  The Parties believe the terms of the settlement as set forth in this Settlement Agreement are a fair, adequate and reasonable settlement of this Collective Action and have arrived at this Settlement Agreement in arms-length negotiations, taking into account all relevant factors.  This Settlement Agreement has been drafted jointly by counsel for the Parties.  Hence, in any construction or interpretation of this Settlement Agreement, the same shall not be construed against any of the Parties.

37.    Retention of Jurisdiction. The Court shall retain jurisdiction with respect to the interpretation, implementation and enforcement of the terms of this Settlement Agreement and all orders and judgments entered in connection therewith, and the Parties and their counsel hereto submit to the jurisdiction of the Court for purposes of interpreting, implementing and enforcing the settlement embodied in this Agreement and all orders and judgments entered in connection therewith.

38.    Agreement of Named Plaintiff. The Named Plaintiff agrees not to object to or appeal any of the terms of this Settlement Agreement. Non-compliance by the Named Plaintiff with this paragraph shall be void and of no force or effect. Any such objection shall therefore be void and of no force or effect.

39.    No Signature Required by Opt-In Plaintiffs on Settlement Agreement. Because the Opt-In Plaintiffs are numerous, it is impossible or impractical to have each one execute this Settlement Agreement. The FLSA Notice will advise all Opt-In Plaintiffs of the binding nature of the release and such shall have the same force and effect as if this Settlement Agreement were executed by each Opt-In Plaintiff.

40.    Titles and Captions of No Force. Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any of its provisions. Each term of this Settlement Agreement is contractual and not merely a recital.

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of this 12th day of June, 2012:

**On Behalf of the Named Plaintiff**

Shanon J. Carson
Sarah R. Schalman-Bergen
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, Pennsylvania 19103
Tel: (215) 875-4656
Fax: (215) 875-4604
scarson@bm.net

_____
David A. Hughes
**HARDIN & HUGHES, LLP**
2121 14th Street
Tuscaloosa, AL 35401
Tel: (205) 344-6690
Fax: (205) 344-6188
dhughes@hardinhughes.com

*Attorneys for Named Plaintiff and Opt-In Plaintiffs*

_____
Troy Bearden, Named Plaintiff


**On Behalf of Precision Air Drilling Services, Inc.**


_____
Name:_____
Title:_____



_____
Donald B. Massey
DONALD B. MASSEY, P.C.
2808 N. Avenue
Suite 450, Wells Fargo Bank Center
Grand Junction, CO 81501
Telephone: (970) 243-4904
Fax: (970) 243-4906
dbmasseylaw@bresnan.net

*Attorneys for Defendant*

14

David A. Hughes
**HARDIN & HUGHES, LLP**
2121 14th Street
Tuscaloosa, AL 35401
Tel: (205) 344-6690
Fax: (205) 344-6188
dhughes@hardinhughes.com

*Attorneys for Named Plaintiff and Opt-In Plaintiffs*

Troy Bearden, Named Plaintiff

**On Behalf of Precision Air Drilling Services, Inc.**

Name:
Title:

Donald B. Massey
DONALD B. MASSEY, P.C.
2808 N. Avenue
Suite 450, Wells Fargo Bank Center
Grand Junction, CO 81501
Telephone: (970) 243-4904
Fax: (970) 243-4906
dbmasseylaw@bresnan.net

*Attorneys for Defendant*

14

David A. Hughes
**HARDIN & HUGHES, LLP**
2121 14th Street
Tuscaloosa, AL 35401
Tel: (205) 344-6690
Fax: (205) 344-6188
dhughes@hardinhughes.com

*Attorneys for Named Plaintiff and Opt-In Plaintiffs*

Troy Bearden, Named Plaintiff

**On Behalf of Precision Air Drilling Services, Inc.**

Name:_____
Title:_____

Donald B. Massey                    6-12-2012
DONALD B. MASSEY, P.C.
2808 N. Avenue
Suite 450, Wells Fargo Bank Center
Grand Junction, CO 81501
Telephone: (970) 243-4904
Fax: (970) 243-4906
dbmasseylaw@bresnan.net

*Attorneys for Defendant*

14

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| TROY BEARDEN, individually and on behalf | : | Civil Action No.:  2:11-cv-01511-NBF |
| of all persons similarly situated, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PRECISION AIR DRILLING | : | |
| SERVICES, INC., | : | |
| | : | |
| Defendant. | : | |

<u>**NOTICE OF COLLECTIVE ACTION SETTLEMENT**</u>

**Please Read This Notice Carefully.  This Notice Could Affect Your Legal Rights.  You Are Entitled To Money From This Settlement.**

**TO:  All individuals who are current or former employees of Defendant Precision Air Drilling Services, Inc. at any time between November 28, 2008 and April 30, 2012, who were classified as non-exempt and paid pursuant to a daily rate compensation system, including but not limited to Operators and those in similarly titled positions.**

**RE:  Fair Labor Standards Act Collective Action Settlement for claims of unpaid overtime compensation**

**IMPORTANT:**

**IF YOU WISH TO PARTICIPATE IN THIS SETTLEMENT, YOU MUST SIGN THE ENCLOSED CLAIM AND OPT-IN CONSENT FORM AND RETURN IT TO THE CLAIMS ADMINISTRATOR WITH A POSTMARK NO LATER THAN [DATE].**

<u>**INTRODUCTION**</u>

The purpose of this Notice is to inform you of a court-approved settlement (the "Settlement") of a Fair Labor Standards Act collective action lawsuit entitled *Bearden v. Precision Air Drilling Services, Inc.*, pending in the United States District Court for the Western District of Pennsylvania (the "Court"), Civil Action No. 2:11-cv-01511-NBF (the "Lawsuit"), against Defendant Precision Air Drilling Services, Inc. ("Defendant" or "Precision"), and to instruct you on the procedure for participating in the Settlement.  The Lawsuit is brought by Plaintiff Troy Bearden on behalf of similarly situated current and former employees.  The Lawsuit claims that Defendant violated federal law by failing to properly pay overtime compensation to its non-exempt daily rate employees.  The Lawsuit claims that daily rate

compensation systems are illegal when employees are not paid an overtime premium for all hours worked over forty (40) in a work week.

You received this Notice either because you already joined this litigation as an Opt-In Plaintiff (by filing an Opt-In Consent Form), or because Defendant's records indicate that you were employed by Precision at some time between November 28, 2008 and April 30, 2012 as a non-exempt employee and were paid pursuant to a daily rate compensation system.  All persons receiving this Notice may be affected by the legal proceedings in this action.  To participate in this Settlement and receive compensation, you must sign and return the attached "Claim and Opt-In Consent Form" if you have not already done so.

**THIS NOTICE IS TO INFORM YOU ABOUT:**

1.      WHY SHOULD YOU READ THIS NOTICE

2.      WHAT IS THIS CASE ABOUT? DESCRIPTION OF THE LAWSUIT

3.      WHO ARE THE ATTORNEYS REPRESENTING THE PLAINTIFF?

4.      WHAT ARE YOUR RIGHTS? WHAT CLAIMS ARE YOU RELEASING BY PARTICIPATING IN THIS SETTLEMENT?

5.      CAN DEFENDANT RETALIATE AGAINST ME FOR PARTICIPATING IN THIS LAWSUIT?

5.      HOW MUCH CAN I EXPECT TO RECEIVE?

6.      ADDITIONAL IMPORTANT INFORMATION

| **1.      Why Should You Read This Notice?** |
| --- |

This Notice tells of your rights to share in the monetary proceeds of this Settlement.  The United States District Court for the Western District of Pennsylvania has approved this Settlement.  You received this Notice either because you already joined this litigation as an Opt-In Plaintiff, or because Defendant's records indicate that you were employed by Precision at some time between November 28, 2008 and April 30, 2012 as a non-exempt employee and were paid pursuant to a daily rate compensation system.  All persons receiving this Notice may be affected by the legal proceedings in this action.  To participate in this Settlement and receive compensation, you must sign and return the attached "Claim and Opt-In Consent Form" if you have not already done so. You will not receive any money from this Settlement unless you sign and return the form.

| **2.      What Is This Case About?  Description of the Lawsuit.** |
| --- |

Plaintiff Troy Bearden originally filed the Lawsuit in the United States District Court for the Western District of Pennsylvania on November 28, 2011.  Plaintiff retained the attorneys listed below to pursue his legal claims in this Lawsuit.  Plaintiff alleged that Defendant failed to

2

properly pay overtime compensation to those it classified as non-exempt, daily rate employees under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA").  The Lawsuit claims that Defendant violated federal law by failing to properly pay overtime compensation to its non-exempt daily rate employees.  The Lawsuit claims that daily rate compensation systems are illegal, including in the oil and gas drilling industry, when employees are not paid an overtime premium for all hours worked over forty (40) in a workweek.  Plaintiff's FLSA claims were alleged as a collective action pursuant to 29 U.S.C. § 216(b).  Plaintiff sought to recover payment for all unpaid overtime wages, as well as liquidated damages, reasonable attorneys' fees, and litigation costs on behalf of himself and similarly situated employees.

On April 30, 2012, the Parties participated in mediation in Pittsburgh, Pennsylvania, overseen by an experienced mediator.  As a result of the mediation, and subsequent negotiations, the Parties have agreed to settle this Lawsuit.  The Court has approved the Settlement, and found that it is fair, reasonable and adequate, and has authorized this Notice to be sent to you.  If you are receiving this Notice, you are entitled to receive money from this Settlement, **provided that you submit a valid and timely "Claim and Opt-In Consent Form" as indicated below.**

| |
|---|
| **3.        Who Are the Attorneys Representing the Plaintiff?** |

Plaintiff is represented by the following attorneys:

Shanon J. Carson, Esq.
Sarah R. Schalman-Bergen, Esq.
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 875-3053
Facsimile: (215) 875-4604
Email: scarson@bm.net
Email: sschalman-bergen@bm.net
Website: www.bergermontague.com

David A. Hughes, Esq.
**HARDIN & HUGHES, LLP**
2121 14th Street
Tuscaloosa, AL 35401
Telephone: (205) 344-6690
Facsimile: (205) 344-6188
Email: dhughes@hardinhughes.com

You can contact the attorneys above if you have any questions about this Notice or the Settlement.

| 4. | **What Are My Rights?** |
|---|---|

- If you already opted into the Lawsuit at an earlier date by returning an Opt-In Consent Form, you will automatically get money from the Settlement.  Specifically, if you previously filled out and returned an Opt-In Consent Form, then you do not have to do anything to receive your share of the settlement proceeds, **and there is no Claim Form enclosed because you are already recognized as having made a claim**.

- If you did not previously fill out and return an Opt-In Consent Form, **then you will only get money from the Settlement if you now timely fill out and mail the enclosed Claim and Opt-In Form to the  Claims Administrator at**: Attn: Precision Air Drilling Collective Action Settlement, Heffler, Radetich & Saitta LLP, 1515 Market Street, Suite 1700, Philadelphia, PA 19102.

By completing the enclosed "Claim and Opt-In Consent Form," you hereby agree to release Precision Air Drilling Services, Inc., any subsidiary, parent company, affiliated entity, related entity, successor, assign, or division of Precision Air Drilling Services, Inc., and any current or former officer, director, owner, employee or shareholder of Precision Air Drilling Services, Inc from any and all "Settled Claims," which is defined in the Settlement Agreement as:

> any and all claims under the FLSA which were asserted in this Collective Action against the Released Parties and which arise based on the same facts set forth in the Collective Action on behalf of the Opt-In Plaintiffs with respect to the time that they were employed and classified by Precision Air Drilling Services, Inc. as non-exempt, daily rate Operators or other non-exempt, daily rate positions between November 28, 2008 and April 30, 2012.

The Final Judgment and Dismissal of this Lawsuit will resolve the Settled Claims to the extent provided in the Settlement Agreement and will permanently bar any person who submits a "Claim and Opt-In Consent Form" from prosecuting any and all such claims for unpaid wages and overtime compensation under the FLSA during the time they were employed and classified by Precision Air Drilling Services, Inc. as non-exempt, daily rate Operators or other non-exempt, daily rate positions.  However, if you do not submit a "Claim and Opt-In Form," your claims are not released.  You are only bound by the release of Settled Claims if you actually submit a timely and valid "Claim and Opt-In Form."

| 5. | **Can Defendant Retaliate Against Me for Participating in this Lawsuit?** |
|---|---|

No.  If you are a current employee of Defendant, your decision as to whether or not to participate in this Lawsuit will in no way affect your employment with Defendant.  It is illegal for Defendant to take any adverse employment action against you as a result of your participating in this Lawsuit.  In fact, Defendant encourages you to participate in this settlement and receive your share of the monetary proceeds.

| 6. | How Much Can I Expect To Receive? |
|---|---|

Defendant has agreed to pay Five Hundred Thousand Dollars ($500,000.00) to settle the Lawsuit.  The term "Net Settlement Amount" means the Gross Settlement Amount of $500,000 less: (1) the total of Fifteen Thousand Dollars ($15,000.00) set aside for the Named Plaintiff as compensation for his retaliation claim against Defendant, and for his efforts in bringing and prosecuting this matter; (2) the payment of attorneys' fees to Plaintiff's Counsel, not to exceed One Hundred and Sixty-Six Thousand, Five Hundred Dollars ($166,500.00) (which is approximately one third or 33.33% of the Gross Settlement Amount), and the payment of current out-of-pocket costs incurred by Plaintiff's Counsel, not to exceed Nine Thousand Two Hundred Eighteen Dollars and Eighty-Five Cents ($9,218.85); and (3) a maximum of Fifteen Thousand Dollars ($15,000.00) for the Claims Administrator's estimated costs of the settlement administration.

Pursuant to this Settlement Agreement, the Net Settlement Amount shall be approximately Two Hundred Ninety-Four Thousand, Two Hundred Eighty-One Dollars and Twenty Cents ($294,281.20).  Defendant has identified a total of 107 individuals who are potentially eligible to participate in the Settlement.  Each individual who submits a "Claim and Opt-In Consent Form," or who already submitted an Opt-In Consent Form shall receive a share of the Net Settlement Amount, which will be determined based on the total number of weeks that the respective individual worked for Defendant during the time period between November 28, 2008 and April 30, 2012.  Each week shall equal one settlement share, and the total number of settlement shares for all individuals who submits a "Claim and Opt-In Form," or who already submitted an Opt-In Consent Form will be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure.  That figure will then be multiplied by each individual who submits a "Claim and Opt-In Consent Form," or who already submitted an Opt-In Consent Form's number of settlement shares to determine the individual Settlement Awards. All Settlement Award determinations shall be based on Defendant's personnel and payroll records.  All valid and timely claims will be paid from the Net Settlement Amount.  The Claims Administrator also will deduct applicable employee payroll taxes and withholdings from the Settlement Awards.

**NOTE: YOU WILL ONLY GET MONEY FROM THE SETTLEMENT IF YOU PREVIOUSLY SIGNED AND RETURNED AN OPT-IN CONSENT FORM OR IF YOU NOW SUBMIT A VALID AND TIMELY CLAIM AND OPT-IN FORM.**

**It is your responsibility to ensure that the Claims Administrator has timely received your claim.  You may contact the Claims Administrator at the toll-free number listed below to ensure that your claim has been received.  It is also your responsibility to keep a current address on file with the Claims Administrator to ensure receipt of your monetary Settlement Award.  If you fail to keep your address current, you may not receive your Settlement Award.**

| 7. | **Additional Information** |
|---|---|

**IF YOU NEED MORE INFORMATION OR HAVE ANY QUESTIONS**, you may contact the Claims Administrator at the toll-free telephone number listed at the end of this Notice or by email.  Please refer to the Precision Air Drilling Collective Action Settlement.

Attn: Precision Air Drilling Collective Action Settlement

Heffler, Radetich & Saitta LLP

1515 Market Street, Suite 1700

Philadelphia, PA 19102

Toll-Free Telephone Number:  _____

Facsimile Number: _____

Email Address: _____

This Notice only summarizes the Lawsuit, the Settlement and related matters.  For more information, you may inspect the Court files at the Office of the Clerk, United States District Court located at 700 Grant Street, Pittsburgh, PA 15219, from 9:00 a.m. to 5:00 p.m., Monday through Friday.

**PLEASE DO NOT TELEPHONE THE COURT FOR INFORMATION ABOUT THIS SETTLEMENT OR THE CLAIMS PROCESS.**

Dated: _____, 2012

# Exhibit B

**Claim and Opt-In Consent Form**

**Must be Returned and Postmarked No Later Than DATE, 2012**

MAIL TO:

**PRECISION AIR DRILLING SETTLEMENT ADMINISTRATOR**

Heffler, Radetich & Saitta, LLP
1515 Market Street, Suite 1700
Philadelphia, PA 19102
[INSERT TELEPHONE NUMBER]
[INSERT FAX NUMBER]
[INSERT EMAIL ADDRESS]

**CLAIMANT INFORMATION:**
[INSERT CLAIMANT NAME AND ADDRESS]

Claim No.:
If different than the preprinted data to the left, please print your correct legal name, current address and Social Security Number here:

Telephone No.:
Email Address:

Social Security No.: xxx-xx-[ INSERT]

**CLAIM AND OPT-IN CONSENT FORM**

**TO SHARE IN THE MONETARY RECOVERY FOR THE PRECISION AIR DRILLING FAIR LABOR STANDARDS ACT COLLECTIVE ACTION SETTLEMENT, YOU MUST COMPLETE, SIGN AND RETURN THIS CLAIM FORM.   THIS CLAIM FORM MUST BE SIGNED, RETURNED AND RECEIVED BY THE SETTLEMENT ADMINISTRATOR NO LATER THAN [DATE].**

Precision's Air Drilling Services, Inc.'s ("Precision's") records indicate that during the relevant time period between November 28, 2008 and April 30, 2012, you worked for Precision and were paid at a daily rate from _____ to _____ , for a total of _____ weeks during that time period.

If the above information is incorrect, please enter the number of weeks you believe you worked for Precision and were paid at a daily rate between November 28, 2008 and April 30, 2012: ( ___ weeks).  Please note that if you disagree with the above information, you must provide documentation to support your dispute.

If your address changes, send the Settlement Administrator your new address.  It is your responsibility to keep your address on file with the Settlement Administrator so that you can be sure to receive your Settlement Award.

By signing below, I certify that I was employed by Precision Air Drilling Services, Inc. and that I was classified as a non-exempt, daily rate employee at some point during the time period from November 28, 2008 to April 30, 2012; that my name, address, telephone number and Social Security Number or Tax Identification Number written above are correct; and that all other information that I have provided in this document is correct.  I also hereby consent and agree to join this lawsuit, and I hereby opt in to become a plaintiff in this lawsuit and consent to be bound by the collective action settlement of all "Settled Claims" as set forth in the Notice of Fair Labor Standards Act Settlement and the Settlement Agreement.  If my address changes before I receive my settlement payment, I will notify the Settlement Administrator at the address listed above.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Date:  _____          _____
                                                      **Signature of [INSERT NAME]**